# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| STEVEN A. LEVIN, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CIVIL CASE NO. 05-00008 <br><br> **DECISION AND ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the court is Defendant United States of America's Motion for Summary Judgment and Supplemental Motion for Summary Judgment. *See* Mot. Summ. J., ECF No. 141; *see also* Supp. Mot. Summ. J., ECF No. 180. The court heard oral argument on January 23, 2017. *See* ECF No. 188. After reviewing the parties' submissions, and relevant caselaw and authority, and having heard argument from counsel on the matter, the court hereby **DENIES** Defendant's Motion for Summary Judgment, for the reasons stated herein.

## I. BACKGROUND

### A. Procedural Background

On March 2, 2005, Levin filed a Complaint, seeking damages pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, for negligent medical malpractice[1] and battery[2] against the United States government and Dr. Frank M. Bishop.[3] *See*

---

[1] On September 12, 2008, the court granted the United States' motion for summary judgment on the medical malpractice claim. *See* Order, ECF No. 84.

1

Compl. at 1-5, ECF No. 1. Under the FTCA, the United States is liable for injuries "caused by the negligent or wrongful act or omission" of its employees to the same extent as a private individual under the law of the place where the tort occurred. 28 U.S.C. § 1346(b)(1).

On June 9, 2014, the United States moved for summary judgment on the battery claim, relying on *Mims v. Boland*, 110 Ga. App. 477, 138 S.E.2d 902 (Ga. Ct. App. 1964). Mot. Summ. J. at 1, 5-8, ECF No. 141. The United States argues that because Levin cannot prove that he withdrew his written consent in a manner that was unequivocal, subject to no other inference, such that a reasonable man would have no doubt, summary judgment in its favor is warranted. *Id.* at 1. Levin opposed the motion, arguing that the court had not adopted the *Mims* standard, and that even if *Mims* applies, Levin has established genuine issues of material fact which preclude summary judgment. Opp'n at 4, ECF No. 148. The United States filed its Reply on August 25, 2014. Reply, ECF No. 149.

This court found no authority from the Supreme Court of Guam on what establishes a patient's effective withdrawal or revocation of consent during a procedure where consent was previously given in such a manner that would render the medical provider liable for battery and thus issued the following certified question:

### CERTIFIED QUESTION

1. In a medical battery case, with respect to what constitutes effective withdrawal of written consent as a matter of law after treatment or examination has commenced or is underway, does Guam follow the two-prong standard set forth in *Mims v. Boland*, 110 Ga. App. 477, S.E.2d 902 (Ga. Ct. App. 1964)?

---

[2] On June 3, 2009, the court granted the United States' motion to dismiss the battery claim, holding that the Gonzalez Act, 10 U.S.C. § 1089, does not authorize battery claims against the United States when military doctors operate without the patient's consent. *See* Order, ECF No. 110. The dismissal of the battery claim was affirmed by the Court of Appeals for the Ninth Circuit. *Levin v. United States*, 663 F.3d 1059, 1065 (9th Cir. 2011). In resolving a split among the circuit courts of appeals, the Supreme Court reversed the judgment of the Ninth Circuit and remanded for further proceedings. *Levin v. United States*, 133 S. Ct. 1224, 1235 (2013).

[3] On June 27, 2005, the court granted the United States' motion to have itself named as the sole defendant. *See* ECF No. 15.

2

Order at 2, ECF No. 160.

The Supreme Court of Guam issued its Opinion and corresponding Judgment on the matter on April 21, 2016. *See* Opinion, ECF No. 172; *see also* Judgment, ECF No. 173.

The United States filed its Supplemental Motion for Summary Judgment on November 21, 2016. *See* ECF No. 180. Levin filed his Supplemental Opposition on December 19, 2016, and the United States filed its Supplemental Reply on January 3, 2017. *See* ECF Nos. 183 and 187.

### B. Factual Background

On December 31, 2002 and again on March 3, 2003, Levin gave informed consent to a procedure known as "extracapsular cataract extraction (phacoemulsification) with posterior chamber intraocular lens implant." Mot. Summ. J. at Ex. A, ECF No. 141. On March 3, 2003, Levin also signed a consent form entitled "Request for Administration of Anesthesia and for Performance of Operations and Other Procedures." *Id*. Finally, on March 12, 2003, Levin signed a consent form entitled "Consent for Anesthesia Service." *Id*.

On March 12, 2003, Frank M. Bishop M.D., LCDR, performed Levin's surgery at the U.S. Naval Hospital on Guam. Levin Aff. at ¶ 4, ECF No. 79. Levin claims to have withdrawn his consent to the surgery at least twice—once when he saw the equipment in the operating room, which he states "did not inspire confidence," and another time after he was administered a type of anesthesia called Versed. *Id.* at ¶ 6.[4] However, the surgery still took place. *Id*. During the surgery, Plaintiff's iris or pupil began to contract. Compl. at ¶ 6, ECF No. 1. This circumstance required the use of a hook-like "retractor" to keep the aperture open so that the surgery could continue. *Id*.

---

[4] In particular, Levin was disturbed that the operating team intended to "use a rolled up towel to stabilize [his] head during surgery." Levin Aff. at ¶ 6, ECF No. 79.

3

After the surgery, Levin suffered "clouding of the cornea," which the United States noted was "a known complication of cataract surgery that was discussed with [Levin] during his Informed Consent session with the surgeon." Mot. Summ. J. at 3 and Ex. C at 21, ECF No. 75; *see also* Mot. Summ. J. at Ex. A, ECF No. 141. Levin also claims to have suffered "severe corneal edema, which caused severe pain, some ptosis, disorientation, discomfort and problems with glare and depth of field vision as well as greatly diminished visual acuity." Compl. at ¶ 7, ECF No. 1. Levin requires continuing treatment, likely for the rest of his life. *Id.* at ¶ 9.

## II. APPLICABLE LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure ("FRCP") 56(a). A fact is material if it might affect the outcome of the suit under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A shifting burden of proof governs motions for summary judgment under FRCP 56. *In re Oracle Corp. Securities Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment bears the initial burden of proving an absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Where, as here, the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the movant meets its burden, the burden then shifts to the nonmoving party to set forth "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. "The mere existence of a scintilla of evidence . . . will be insufficient" and the nonmoving party

must do more than simply show that there is "some metaphysical doubt as to the material facts." *Id.* at 261; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Viewing the evidence in the light most favorable to the nonmoving party, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587.

## III. DISCUSSION

The United States moved for summary judgment, arguing that it is entitled to summary judgment because Levin cannot prove that he withdrew his written consent in a manner that was unequivocal, subject to no other inference, such that a reasonable man would have no doubt. *See* Mot. Summ. J. at 1, 6-7, ECF No. 141 (citing *Mims v. Boland*, 110 Ga. App. 477, 138 S.E.2d 902 (Ga. Ct. App. 1964)).

Levin opposed the motion. Opp'n at 1, ECF No. 148. First, Levin asserted that it would be an improper credibility determination to consider the impact of the anesthesia and mental disorder on his first-hand perception of the procedure. *Id.* at 1-4. Second, Levin maintained that the principle that a signed consent form creates a presumption of informed consent is irrelevant because he concedes his initial consent was valid. *Id.* at 4. Instead, he clarified that his previously given consent was withdrawn. *Id.* Finally, Levin argued that even if *Mims* applies, Levin has established genuine issues of material fact which preclude summary judgment. *Id.* at 4-7.

Before turning to the parties' arguments, the court must first assess the withdrawal of consent standard enunciated by the Supreme Court of Guam.

**A. Levin's Enhanced Burden**

    **1. Standard Enunciated by the Supreme Court of Guam**

The Supreme Court of Guam was "persuaded by the language used in *Yoder* by the

Supreme Court of Nebraska.[5] As such, [the court held] that 'where . . . a physician is conducting an examination with express or implied consent, a plaintiff must prove that she withdrew her consent.'" *Levin*, 2016 Guam 14 ¶ 19; *see also Yoder*, 758 N.W.2d at 637. Moreover, the court held "that the burden of proof to establish an effective withdrawal of consent under these circumstances is properly with the plaintiff." 2016 Guam 14 ¶ 20.

Accordingly, this court determined that the Supreme Court of Guam's decision to adopt the language of *Yoder* rather than *Mims* does not lessen Levin's applicable burden as suggested by Levin. Amended Order at 6-7, ECF No. 179. Thus, to defeat the United States' Summary Judgment, Levin first must show that he "used language that unequivocally revoked his . . . consent and was subject to no other reasonable interpretation." *Levin*, 2016 Guam 14 ¶ 19 (quoting *Yoder*, 758 N.W.2d at 637). Second, Levin must establish that "stopping the treatment or examination was medically feasible." *Id.*

### 2. The Impact of the Enhanced Burden on this Court's Summary Judgment Assessment.

The United States asserts that this court must consider "whether there is evidence in the quantum and quantity such that [Levin] can sustain his burden of proof under the standard followed by Guam." Supp. Reply at 2, ECF No. 187. The United States Supreme Court has said that "a higher burden of proof should have a corresponding effect on the judge when deciding whether to send the case to the jury." Supp. Reply at 1, ECF No. 187.

Summary judgment is appropriate under FRCP 56(c) "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[5] In *Yoder*, the Supreme Court of Nebraska affirmed summary judgment where the plaintiff, who had prior shoulder surgery, stated "that he felt some pain but he never asked [defendant] to stop the examination" when defendant manipulated plaintiff's right shoulder in a manner that caused permanent injury. 758 N.W.2d at 633-34, 639.

322–23 (1986). When this occurs, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. Consequently, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* (citation omitted).

In this case, an essential element to establishing an effective withdrawal of consent requires Levin to prove that he "used language that unequivocally revoked his . . . consent and was subject to no other reasonable interpretation." *Levin*, 2016 Guam 14 ¶ 19 (quoting *Yoder*, 758 N.W.2d at 637). This court is guided by the substantive evidentiary standard set forth by the Supreme Court of Guam for summary judgment purposes. *See Anderson*, 477 U.S. at 255-56 ("[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."). Consequently, this court's "summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find" that Levin's statements purporting to withdraw consent were unequivocal and subject to no other reasonable interpretation. *See id.*; *see also Levin*, 2016 Guam 14 ¶ 21.

**B. Levin Has Raised A Triable Issue of Fact That He Unequivocally Revoked His Consent to the Procedure.**

In Guam, written consent to a surgical or medical procedure is presumed valid. 10 G.C.A. § 11104.[6] To overcome this presumption of the written consent, Levin bears the burden

---

[6] Section 11104 states, in pertinent part:

> The written consent to a surgical or medical procedure . . . shall be presumed to be valid and effective . . . . Except as herein provided, no evidence shall be admissible to impeach, modify or limit the authorization for performance of the procedure or procedures set forth in such written consent. This Section shall not effect a physician's right to obtain the oral or implied consent of a patient to a medical procedure.

7

of satisfying the first prong of Guam's standard for withdrawing consent in a battery case. *See Levin*, 2016 Guam 14 ¶ 21.

Levin asserts that he withdrew consent to the surgery at least twice—once when he saw the equipment in the operating room, which he states "did not inspire confidence," and another time after he had been anesthetized with Versed. Levin Aff. at ¶ 6, ECF No. 79. Both the pre- and post-sedation instances of consent withdrawal will be analyzed to determine whether it meets Guam's standard.

### 1. Pre-Sedation.

Levin claims to have first withdrawn consent to the procedure prior to the administration of anesthesia. Levin Aff. at ¶ 6, ECF No. 79. During his deposition, Levin testified that he was disturbed by equipment in the operating room he perceived was outdated. *See* Opp'n Mot. Summ. J. at Pl's Ex. A, Levin Dep. at 132, ECF No. 148-1. Upon seeing the equipment, Levin states that he inquired about the modernity of the equipment and was informed that new equipment was expected "in about a month." *Id.* at 136. Levin testified that he then requested postponement of the surgery until new equipment arrived, but he was told by Dr. Bishop that the surgery should go forward "because we're all here." *Id.* After hearing this, Levin testified that he got "pretty worked up," and represented that he told the nurse to "'Make a note, the patient is withdrawing consent.' And then I thought that was it, I don't need to argue anymore." *Id.*

The United States argues that this court may remove the factual question of whether Levin withdrew consent from trial because his claim is "supported solely by [Levin's] own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence." *See* Mot. Summ. J. at

---

10 G.C.A. § 11104.

8

20, ECF No. 141 (citations omitted). Levin counters that self-serving testimony is not automatically rendered incompetent to support or defeat summary judgment. Opp'n at 2-3, ECF No. 148 (citation omitted). Instead, the relevant inquiry is whether the self-serving testimony is based on personal first-hand knowledge. *Id.* at 3 (citing *Cadle Co. v. Hayes*, 116 F.3d 957, 961 n.5 (1st Cir. 1997) ("A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment.")).

In *Villiarimo v. Aloha Island Air, Inc.*, the Ninth Circuit "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." 281 F.3d 1054, 1061 (9th Cir. 2002) (citing *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir. 1996)). There, the plaintiff argued that her employment termination constituted sex-based discrimination. *Id.* The court granted summary judgment because the plaintiff presented no evidence that the employer did not honestly believe its proffered reasons for terminating her employment. *Id.* at 1063.

The United States believes it is entitled to summary judgment under the principles of *Villiarimo*, contending that "no genuine issue may be found where the only evidence presented is uncorroborated and self-serving testimony." Mot. Summ. J. at 5, ECF No. 141 (internal quotation marks omitted). In response, Levin maintains that *Villiarimo* is distinguishable because he can establish that his testimony is first-hand. Opp'n at 3, ECF No. 148. Levin is correct that *Villiarimo*, standing alone, is insufficient to warrant summary judgment because he has provided a first-hand account of events.

The United States Supreme Court has stated that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a

motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 378-80 (2007) (respondents' assertions of car chase insufficient to overcome contradictory videotape capture of the events).

An example of a case where the plaintiff's self-serving testimony is disputed by the record is illustrated in *Southern Pacific Co. v. Matthews*, 335 F.2d 924 (5th Cir. 1964). There, a jury verdict for the plaintiff motorist was reversed because it was supported solely by his self-serving testimony, which was contradicted by the testimony of numerous disinterested witnesses and was at variance with the physical layout of the railroad right of way. *Id.* at 927.

Turning to the facts of this case, there is testimony of multiple witnesses at variance with Levin's asserted withdrawal of consent. Levin's surgeon, Dr. Bishop, testified that he could not recall Levin expressing any reservation about proceeding with the surgery. Mot. Summ. J. at Ex. B (Bishop Dep. 32:14-17), ECF No. 141-2. Dr. Bishop further testified that if a patient withdrew consent during a "non critical phase of the procedure . . . we would not do the surgery." *Id.* at 53:17-21. Although Dr. Bishop indicated that a patient under sedation would be unable to give or withdraw consent, he testified that he had "never had a patient withdraw consent." *Id.* at 61:1-10.

Other witnesses provided consistent accounts to that of Dr. Bishop, including Mikel Coates who assisted during Levin's cataract surgery. Mot. Summ. J. at Ex. E (Coates Dep. 14:23-25), ECF 141-5. Coates did not recall Levin expressing any desire to postpone the operation or complaining about incorrect eye drop dosage. *Id.* at 47:3-12 ("I don't recall him saying anything about, 'I want to stop' or 'I don't want to do this' or 'We can do this another day.' I don't remember that.").

Avemaria Reed, LCDR, USN, also assisted in Levin's surgery. Mot. Summ. J. at Ex. C (Reed Dep. 30:17-31:2), ECF 141-3. Although Reed has no particular memory of Levin's individual surgery, she did testify that she never had any instance of a patient withdrawing

consent to a procedure in Guam. *Id.* at 17:7-25.

Notwithstanding this contradictory testimony, Levin testified that he told Nurse Reed that she should "make a note the patient is withdrawing consent." *See* Opp'n Mot. Summ. J. at Pl's Ex. A, Levin Dep. at 131, ECF No. 148-1. He also claims to have said "I don't want to take any chances. I'd like to postpone the operation and do it after you get the new equipment." *Id.* at 139. This language is unequivocal. However, the medical providers' testimony does not fully contradict Levin's testimony. As such, this court cannot say that no reasonable jury would adopt his version of facts.

"[U]ncorroborated, self-serving testimony cannot support a claim if the testimony is based on 'speculation, intuition, or rumor' or is 'inherently implausible.'" *Elix v. Synder*, No. CIV-09-170-C, 2011 WL 4497145, at *7 (W.D. Okla. July 22, 2011), *report and recommendation adopted sub nom. Elix v. Snyder*, No. CIV-09-170-C, 2011 WL 4500808 (W.D. Okla. Sept. 27, 2011), *as amended* (Sept. 30, 2011) (quoting *Darchak v. City of Chicago Board of Education,* 580 F.3d 622, 631 (7th Cir. 2009)). Courts have cautioned, however, that a plaintiff's first-hand testimony is "none of those things." *Id.* In *Elix*, the court denied summary judgment in a 42 U.S.C. § 1983 case where "[t]he [p]laintiff testified as an eyewitness, stating that he was beaten" because "[t]his first-hand account [was] not 'inherently implausible.'" *Id.* Like *Elix,* Levin's first-hand account of events is not "inherently implausible." Moreover, unlike *Scott* and *Matthews*, there is no objective evidence such as a video of the procedure or other physical evidence in this case that contradicts Levin's version of events. Therefore, the issue of whether Levin revoked his consent is a factual question for the jury.

**2. Post-Sedation.**

Levin claims to have withdrawn his consent to the procedure post-sedation:

> I had made my position clear. Perfectly clear, I thought. Bishop decided that he was going to go ahead with it anyhow. I think, I'm

11

> pretty sure, that I even said to him, you know, I can sue you if you go ahead with this because I've withdrawn consent. And he was so confident. He wanted to go ahead with it anyhow.
>
> So, to be complete here, I'm thinking, I either have a successful operation or I sue.
>
> . . .
>
> I'm not changing my position. If you go ahead with this, you could be in big trouble.
>
> . . .
>
> Something like that. I don't know if I said it or thought it or - -

Levin Dep. 153:2-23, ECF No. 141-6; *see also* Levin Aff. at ¶ 6, ECF No. 79.

The United States attacks this testimony in a number of ways, and points out that: (1) the witnesses present at the procedure do not recall Levin withdrawing consent; (2) that Levin's attack on the credibility of the medical providers is insufficient to create a triable issue of fact that the anesthesia administered to Levin rendered his memory of the procedure "impaired and unreliable;" (3) that it is unclear whether Levin merely thought or affirmatively stated his withdrawal from the record; (4) and that expert testimony shows Levin's mental illness led him to recall events differently. Mot. Summ. J. at 3-21, ECF No. 141 (citations omitted)

In Opposition, Levin asserts that it would be an improper credibility determination to consider the impact of the anesthesia and mental disorder on his first-hand perception of the procedure. *See* Opp'n at 1, ECF No. 148. Levin also contends that his testimony presents genuine issues of material fact that he unequivocally withdrew consent which precludes summary judgment. *Id.* at 4-7; *see also* Supp. Opp'n at 2, ECF No. 183.

As stated above, the testimony of the medical providers regarding pre-sedation does not fully contradict Levin's testimony and therefore is insufficient to warrant summary judgment. However, the court determines that there is no clear *post-sedation language* to evaluate through Guam's consent withdrawal framework. Notably, Levin is unsure of whether the lawsuit threat

to Dr. Bishop was spoken or merely thought. *See* Levin Dep. 153:2-23, ECF No. 141-6. With respect to these post-sedation statements, Levin contends that the references to "thinking" that he threatened to sue referred only to his threats to sue, not to his withdrawal of consent. Supp. Opp'n at 3, ECF No. 183. Neither party pointed to any other post-sedation language on the record. As such, the court is unable to make a determination as to the alleged post-sedation statements.

This court will, however, address the United States' arguments regarding its expert testimony to the extent that the administration of anesthesia potentially impaired Levin's recollection of his pre-sedation statements.

Although expert medical testimony is not normally required for a battery claim, *see Hensley v. Scokin*, 148 S.W.3d 352, 356 (Tenn. Ct. App. 2003) (citations omitted), the United States has presented expert reports that Levin could not have remembered post-sedation interactions. Mot. Summ. J. at 17-18, ECF No. 141. The report of Dr. John Hsu, the United States' expert in anesthesiology, points out that "[i]t is clinically supported by the literature that Versed causes anterograde amnesia. Patients cannot remember events that transpired until the effects of the Versed wear off." Mot. Summ. J. at Ex. K (Dr. Hsu Report at 7), ECF No. 141-11.

Medical literature documents that the administration of anesthesia during surgery often causes hallucinations of assaults and dreams while patients are under its influence. *Id.* at 6. Dr. Hsu's report states that Versed, the anesthesia administered to Levin, is most effective during the first hour following administration. *Id.* at 7. During this time, "memory is presumed most impaired and unreliable," and coincidentally, this is the time frame that Levin claims to have withdrawn consent. *Id.*; *see also* Ex. F (Levin Dep. 147:11-21), ECF No. 141-6 (acknowledging there was only a 10-20 minute gap between anesthesia and the procedure). Dr. Hsu further opined that Levin's mental illness (manic depression, posttraumatic stress episodes and bipolar

13

disorder) rendered him more susceptible to the dis-inhibitory effects of Versed. Mot. Summ. J. at Ex. K (Dr. Hsu Report at 6), ECF No. 141-11.

Another physician, Mark I. Levy, MD, DLFAPA, conducted an Independent Psychiatric Medical Examination of Levin. Mot. Summ. J. at Ex. J (Dr. Levy Report), ECF No. 141-10. Dr. Levy reached a parallel conclusion, and determined that Levin's mental disorders combined with "the profound short-term cognitive impairment that is typically induced by the intravenous midazolam (Versed) anesthesia" resulted in a "non-bizarre delusion" that he believes really happened. *Id.* at 9.

Dr. Levy further stated that "it is extremely improbable, if not impossible, that Mr. Levin could have any authentic 'recollection' of any conversation that purportedly occurred during the first hour of intravenous midazolam anesthesia. Such a report simply defies the science." *Id.* at 10. This is because Versed "usually causes complete anterograde amnesia for all events during at least the first hour of anesthesia." *Id.* (footnote omitted) (anterograde amnesia refers to the loss of the ability to create new memories after the event that caused the amnesia, which in turn leads to partial or complete inability to recall the recent past).

The court notes that Dr. Levy uses language that Levin's account is "extremely improbable," but does not conclusively state that the administration of anesthesia definitively renders Levin's account impossible. Additionally, Dr. Hsu's report indicates that 73% of patients who received Versed "had no recall of memory cards shown 30 minutes following drug administration; [and] 40% had no recall of the memory cards shown 60 minutes following drug administration." Mot. Summ. J. at Ex. K (Dr. Hsu Report at 7), ECF No. 141-11. The court observes that Dr. Hsu's report falls short of stating that 100% of patients are unable to recall events following the administration of Versed.

Levin contends that considering the influence of the anesthesia on his memory is

inconsistent with precedent establishing that it is an inappropriate credibility determination to consider the impact of drugs when deciding a summary judgment motion. *See* Opp'n Summ. J. at 1-2, ECF No. 148 (citing *Rodolf v. Kieland*, No. C08-0475-RSL, 2009 WL 1360464, at *4 (W.D. Wash. May 13, 2009) ("Although there are reasons to question [plaintiff's] memory—he may have been under the influence of drugs at the time—it is not the Court's function at summary judgment to weigh credibility or decide the truth of the matter." (citation omitted)); *see also Elix*, 2011 WL 4497145, at *7 (citations and footnote omitted) (holding that where plaintiff provided a first-hand account that he was beaten, the fact that he was under the influence of marijuana and ecstasy did not result in his testimony being "inherently implausible"). The court agrees and determines that Levin has raised a triable issue of fact for determination by a jury regarding whether his pre-sedation statements unequivocally revoked his consent to the eye surgery in a manner that was subject to no other reasonable interpretation.

### C. Levin Has Presented a Triable Issue of Fact That Stopping The Treatment Or Examination Was Medically Feasible.

The second requirement of the test adopted by the Supreme Court of Guam requires the plaintiff to show that "stopping the treatment or examination must have been medically feasible" to constitute an effective withdrawal of consent. *Levin*, 2016 Guam 14 ¶ 21.

Levin presented a Declaration from Sam Friedman, M.D., a physician board certified in internal medicine, oncology, and hematology, which states that "[a]t any time prior to anesthesia being given it is medically feasible to stop any elective procedure." Supp. Opp'n, Ex. A, Friedman Decl. ¶ 2, ECF No. 183-1. Cataract surgery qualifies as an "elective procedure." *Id.* at ¶ 4. Additionally, it is medically feasible to stop any elective procedure even after anesthesia is given "prior to any invasive cutting or otherwise entering the body with surgical tools." *Id.* at ¶ 3. Thus, Levin has presented a triable issue of fact as to whether he met the second prong of Guam's withdrawal of consent test.

15

### III. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is **DENIED**. Levin has raised a triable issue of fact that he used language that unequivocally revoked his consent to his eye surgery that was subject to no other reasonable interpretation, and has also presented a triable issue of fact that stopping the treatment was medically feasible.

A status hearing is hereby set for August 9, 2017, at 9:30 a.m.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
    **Chief Judge**
**Dated: Jul 11, 2017**